

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

---

*100 South Clinton Street, P.O. Box 7198*     *Tel.: (315) 448-0672*
*James M. Hanley Federal Building*                  *Fax: (315) 448-0658*
*Syracuse, New York 13261-7198*

April 18, 2025

**Via CM/ECF**

Hon. Brenda K. Sannes
Chief U.S. District Judge
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse, New York 13261-7336

      **Re:**    *United States v. Jonas Morales-Lopez*, **5:25-CR-94 (BKS)**

Dear Chief Judge Sannes:

      The Government is writing to make this Court aware of a decision issued yesterday in the Northern District of New York that addresses issues raised in the Defendant's pending appeal of his detention order in the above-referenced case. *See United States v. Marroquin-Ramirez*, No. 5:25-CR-125, Dkt. 9 (N.D.N.Y. Apr. 17, 2025) (Brindisi, J.), attached as Ex. 1. The Government recognizes that Federal Rule of Appellate Procedure 28(j) does not apply to the pending detention appeal and that Judge Brindisi's decision is not binding on this Court. However, because the decision addresses arguments and case law cited and relied on by the Defendant in his pending detention appeal, *see* Dkt. 21, the Government attaches it for this Court's reference and consideration.

                                    Respectfully submitted,

                                      JOHN A. SARCONE III
                                      United States Attorney

                                      /s/ Michael F. Perry
              By:   _____

                                      Michael F. Perry
                                      Assistant United States Attorney
                                      Bar Roll No. 518952

cc:    All counsel of record (via CM/ECF)

Enclosure

# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        -v-                                5:25-CR-125 (AJB)

YOVANI HUMBERTO MARROQUIN-
RAMIREZ,

            Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

HON. JOHN A. SARCONE III                              GEOFFREY J.L. BROWN
United States Attorney for                            Assistant United States Attorney
the Northern District of New York
100 South Clinton Street                              NICHOLAS C.E. WALTER
Syracuse, NY 13261                                    Assistant United States Attorney

HON. LISA A. PEEBLES
Federal Public Defender for
the Northern District of New York
Clinton Exchange, Third Floor
4 Clinton Street
Syracuse, NY 13202

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.      INTRODUCTION

The United States of America (the "government") has arrested and charged Yovani Humberto Marroquin-Ramirez ("defendant") with illegal reentry to the United States in violation of 8 U.S.C. § 1326(a).  At his initial appearance on this charge, the Office of the Federal Public Defender (the "FPD") was appointed on defendant's behalf.  The government moved for a

detention hearing on the basis that defendant posed a serious flight risk. But Judge Lovric denied the motion and ordered defendant released on his own recognizance.

The government took an emergency appeal. Dkt. Nos. 1, 2. This Court stayed the release order and directed the parties to brief the matter on an expedited basis. Dkt. No. 5. The motion has been fully briefed. Dkt. Nos. 6–8. The government's appeal and motion to revoke will be GRANTED based on the record and the parties' submissions without oral argument.

## II.    BACKGROUND

On March 25, 2025, a Border Patrol agent swore out a criminal complaint charging defendant with illegal reentry. 5:25-MJ-81 (ML), Dkt. No. 1 ("Compl."). The supporting affidavit alleged that the agent had encountered defendant and three others in a parking lot in Syracuse, New York. *Id*. at 2. Upon questioning, the four individuals admitted that they were Guatemalan citizens and had no documentation permitting them to be in the United States. *Id*. For his part, defendant claimed to have entered the country illegally from Mexico several years ago. *Id*.

Defendant was arrested. A records check revealed that he had been ordered removed twice before, first on May 9, 2019, and then on June 3, 2019, both times at or near the U.S.-Mexico border. Compl. at 2–3. In a subsequent interview, he admitted to illegally entering, and then being removed from, the United States on two occasions. *Id.* And he stated that, after his second deportation, he paid someone $15,000 to help him reenter the country through Texas and take him to New Jersey, where he lived for a year before coming to New York. *Id.*

Defendant's initial appearance was conducted by video. There, U.S. Magistrate Judge Miroslav Lovric appointed the FPD to represent him. 5:25-MJ-81 (ML), Dkt. No. 9 ("Tr.") at 3.

The government sought pretrial detention and moved for a hearing pursuant to § 3142(f)(2)(A) of the Bail Reform Act of 1984 (the "Act"), citing a "serious risk of flight." *Id.* at 7.  Judge Lovric directed the government to explain why a detention hearing was warranted.  *Id*.  The government noted defendant's ties to Guatemala, lack of connections to New York or the United States, and previous illegal entries and deportations, the probabilities that he would serve time in jail and be deported if convicted, as well as the facts that he paid to be smuggled into the country and managed to evade detection in the years since his third and most recent illegal entry.  *Id.* at 8–9.  Defendant opposed, arguing the government had failed to sustain its initial burden and pointing out that, upon his detection in Syracuse, he had cooperated with law enforcement officials after going "undetected for a five-year period." *Id.* at 9–10.

Judge Lovric denied the motion for a detention hearing.  5:25-MJ-81 (ML), Dkt. No. 3.  He reasoned that he was "bound" by decisions in two Northern District of New York cases, *United States v. Singh*, 8:24-CR-394 (MAD) (N.D.N.Y. Oct. 9, 2024), and *United States v. Terrance*, 2025 WL 782340 (N.D.N.Y. Jan. 10, 2025), which, in his view, provided a "roadmap" for evaluating when to hold a detention hearing.  Tr. at 11.  While Judge Lovric acknowledged that the government's proffer might satisfy the elements of the illegal reentry statute, he concluded that a detention hearing was unwarranted because the government did not argue that defendant "ha[d] . . . disobeyed court orders or failed to appear before a court, or committed actions that would clearly indicate that he is someone that would be a serious risk to flee." *Id.* at 12.  Judge Lovric stayed his release order for three days to give the government a chance to appeal.

Two days later, the government appealed, Dkt. No. 1, and filed an emergency motion to revoke, arguing Judge Lovric had erred by misreading, and mistakenly relying on, *Terrance* and

- 3 -

*Singh*, and by misinterpreting the government's arguments for a detention hearing.  Dkt. No. 2.  Defendant opposed, agreeing that the government had not met its burden and contending that it could not do so by relying on evidence that defendant had committed the crime of illegal reentry.  *See* Dkt. No. 4.  The parties subsequently filed supplemental briefing.  Dkt. Nos. 6–8.

### III. LEGAL STANDARD

"If a person is ordered released by a magistrate judge . . . the attorney for the [g]overnment may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release" § 3145(a)(1).  District courts review such orders *de novo*, and in so doing may make new factual findings.  *United States v. Dominguez*, 509 F. App'x 28, 30 (2d Cir. 2013) (summary order).

### IV. DISCUSSION

The Act governs the pretrial release or detention of a criminal defendant.  18 U.S.C. § 3141(a).  As the Second Circuit has explained, § 3142 lays out a two-step process for determining whether a defendant should be detained.  *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam)).

First, on the government's motion or *sua sponte*, "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community."  § 3142(f).  The Second Circuit has interpreted § 3142(f) as requiring proof "by a preponderance of the evidence that the defendant either has

been charged with one of the crimes enumerated in Section 3142(f)(1) or . . . presents a risk of flight or obstruction of justice." *Friedman*, 837 F.2d at 49.

Second, "[t]he judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning" the defendant, the charges, and other enumerated factors. § 3142(g). "To support detention based on danger, the [g]overnment's proof must be clear and convincing, while detention based on risk of flight must be proven by a preponderance of the evidence." *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (citation omitted).

The government contends that Judge Lovric imposed too high a burden at the first stage, erroneously failing to consider information related to the crime charged, the penalties defendant faces, and other evidence the government proffered at the initial appearance, while improperly considering the existence of an immigration detainer. *See* Dkt. Nos. 2-1, 6. In opposition, defendant agrees that the government failed to meet its burden, arguing at base that its proffer impermissibly focused on the crime charged. Dkt. Nos. 4, 7. For the reasons explained below, the Court concludes that the government has cleared the hurdle imposed by this "very low standard." *See Terrance*, 2025 WL 782340, at *8.

      **A.**      **Courts May Consider Evidence Pertaining to Charged Offenses**

As an initial matter, it bears emphasizing that detention decisions are highly fact-specific. The Act instructs that release or detention must be based on the individual circumstances of each case and, indeed, each defendant. § 3145; *see also United States v. Ciccone*, 312 F.3d 535, 542–43 (2d Cir. 2002) (favoring a review of "both the quality and the quantity of the evidence

proffered" about the relevant factors, rather than an application of a "per se rule"); *United States v. Cirillo*, 149 F. App'x 40, 43 (2d Cir. 2005) (summary order) (same). Consequently, prior decisions to grant or deny detention hearings, or for that matter to grant or deny detention, based on the unique facts presented in certain cases should not be misunderstood to compel the same results in later cases with different facts.

Judge Lovric felt "bound" by *Singh* and *Terrance*, both of which entailed comprehensive evaluations of the unique facts and circumstances presented in each case. While these cases correctly identify the minimal threshold burden required to trigger a detention hearing, the fact-bound nature of their analyses means that neither decision can sweep broadly. For instance, before finding in *Singh* that the defendant posed a flight risk sufficient to hold a detention hearing, U.S. District Judge Mae D'Agostino weighed the three-to-five-year mandatory minimum sentence alongside the defendant's fear of deportation, lack of criminal history, minimal ties to both the United States and the Northern District of New York and seeming lack of candor in interactions with government officials. *See Singh*, 8:24-CR-394 (N.D.N.Y. Oct. 9, 2024), Dkt. No. 5 at 10–16. And before concluding that a detention hearing was warranted in *Terrance*, Judge D'Agostino considered the three-year mandatory minimum sentence, the seriousness of the charged conduct, and the defendant's extensive criminal record, history of drug abuse, lack of a passport or assets, family ties to New York, and lack of connections elsewhere. *Terrance*, 2025 WL 782340, at *7–8.

But the facts of *Singh* and *Terrance* will not recur every time the government seeks to detain a border-crossing defendant. So, if these analyses are informative, it is only for the uncontroversial statutory principles they apply. One such principle is that the Act imposes a "very low" threshold burden of proof on the government when it seeks a detention hearing.

*Terrance*, 2025 WL 782340, at *8.  Importantly, to justify a detention hearing, the government need not predict the future with proof that a defendant actually will flee.  Instead, it must only show by a preponderance of the evidence that "there is a serious *risk*" that he will flee.  *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023) (emphasis in original); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) ("Before preventive detention may be ordered . . . the court is obliged to determine both whether the defendant is *likely* to flee the jurisdiction if released, and whether any conditions of release will be reasonably certain to guard against this *propensity* to flee" (emphasis added).).  And as *Singh* and *Terrance* illustrate, this threshold burden is extremely light: evidence concerning a variety of factors can establish a serious risk of flight that warrants a detention hearing under § 3142(f)(2)(A).

This plainly includes evidence concerning the nature and circumstances of a charged offense.  Consider the government's showing at the initial appearance: it noted that defendant faced "a high likelihood of deportation" and "the risk of jail" if convicted, both of which could motivate him to evade further proceedings.  Tr. at 8.  It noted that defendant, who has acknowledged that he is a Guatemalan national, has "ties to a foreign country and [a] lack of ties to this particular area," underscoring that he could disappear into a different community.  *Id.*  It noted that defendant has committed a "number of illegal entries," *i.e.*, three (all of which he has admitted to), and the "lack of deterrence that other deportations have had," highlighting a history of repeatedly failing to abide by clear legal commands.  *Id.*  It noted that, following defendant's second deportation, he "resorted to engaging individuals for significant sums of money," specifically, $15,000, "who then smuggled him across the country," indicating that he has previously tapped into financial and personal resources that facilitated his relocation.  *Id.*  And it

noted that, after illegally entering the United States for a third time, defendant successfully evaded detection for four years, suggesting he could do so once again. *Id.* at 8–9.

While some of these facts overlap with the elements of this particular offense, 8 U.S.C. § 1326(a), they are also highly probative of defendant's ability and motivation to flee. As such, even if one reads the Second Circuit's decision in *Friedman* as holding that "evidence of the commission of a serious crime and the fact of a potentially long sentence," standing alone, cannot warrant a detention hearing, 837 F.2d at 50, it does not follow that evidence of the offense conduct and its potential consequences is altogether barred from the analysis.

Defendant has made this argument repeatedly. *See* Dkt. Nos. 4 at 6, 7 at 10. But this reading rests on a shaky foundation. In *Friedman*, the Circuit merely observed that, "[i]n other cases concerning risk of flight, we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence . . . ." *Id*. Indeed, in the only case citing *Friedman* for this proposition, a separate panel of the Circuit agreed with a trial court's decision that detention due to a serious flight risk was entirely proper where "defendants possess[ed] a strong motive to flee because (a) they are charged with a serious crime that allegedly involved violence; (b) the evidence of their guilt . . . appears strong; (c) the charges have already subjected defendants to considerable public obloquy; and (d) if convicted, they likely face a lengthy term of incarceration." *United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007). So, while it "ha[d] not been *inclined* to find that such circumstances, by themselves, suffice to support detention," the Circuit concluded that "a second factor *strengthens* the case for detention: defendants' ample means to finance flight." *Id.* (emphasis added, citation to *Friedman* omitted).

Nothing in *Friedman* or *Sabhnani* demands that courts ignore proffers of evidence that are related to charged offenses in weighing whether to grant detention hearings. Indeed, the

Court knows of no case holding that a court facing such a threshold question must blind itself to the charged offense conduct, particularly when evaluated in tandem with other information. Thus, in *United States v. Coleman*, this Court—while recognizing *Friedman*—explicitly noted its "concerns about [the] risk of flight . . . stem[ming] from the gravity of the charges facing the defendant and the potential consequences associated with those charges," alongside other factors including the defendant's "tenuous ties to this district." 2001 WL 1249682, at *5 (N.D.N.Y. July 24, 2001); *accord* § 3142(g)(1) (directing courts to consider, at the second step, "the nature and circumstances of the offense charged"). It would strain credulity to imply that a court could not consider similar factors here.

### B. Immigration Detainers Must Not Factor into Analysis Under the Act

Next, the parties dispute whether the existence of an immigration detainer was relevant to Judge Lovric's decision to order release, raising the question of whether courts may consider immigration detainers under the Act. In its papers, the government claims that Judge Lovric improperly weighed the existence of an immigration detainer in declining to order a detention hearing. *See* Dkt. No. 6 at 23. Defendant argues that the existence of an immigration detainer was not a factor in Judge Lovric's decision. Dkt. No. 7 at 13 n.10.

The record is somewhat hazy. *See* Tr. at 12–13.[1] But setting aside whether Judge Lovric in fact relied upon the existence of an immigration detainer, defendant previously conceded that

---

[1] Judge Lovric denied the motion for a detention hearing without specifically referencing an immigration detainer, but warned defendant, "[n]ow if you are taken into administrative custody by the immigration authorities, you must nevertheless comply, if and when they release you, to appear here as directed by this court." Tr. at 12–13. Earlier at the initial appearance, though, Judge Lovric also noted that, in *Singh* and *Terrance*, "by moving under [§3142](f)(2)(A), Judge D'Agostino . . . indicated that a charge of illegal reentry, in addition to a detainer being filed and in addition to the individual having no legal status in the United States, was also not sufficient to warrant the granting of a detention hearing." *Id.* at 11–12. Regardless, as detailed *infra*, this Court strongly disagrees with the suggestion that the seriousness or circumstances of a charge of illegal reentry, or the fact that a defendant faces deportation (as distinct from the existence of an immigration detainer), cannot factor into the flight-risk analysis.

- 9 -

doing so would be impermissible. Tr. at 9 ("The fact that there's a detainer, an immigration detainer, again, is not a factor that the court should consider.").

The Court writes to clarify that considering an immigration detainer would be improper. As distinct from a defendant's connections to a foreign country, likelihood of deportation, fear of deportation, previous deportations, or other similar factors, an immigration detainer's appropriate role in deciding whether to order a detention hearing, or to order detention, is as follows: none. *See United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019) (observing that "neither the [Bail Reform Act] nor the [Immigration and Naturalization Act] precludes the government from exercising its detention authority pursuant to the other statute"). As the Ninth Circuit has explained, "[a] defendant's immigration detainer is not a factor in this analysis, whether as evidence for or against a finding that the defendant poses a risk of nonappearance." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).

### C.      Defendant Poses a Serious Flight Risk Warranting a Detention Hearing

In any event, the Court finds that the government has plainly carried its "very low" burden of showing that defendant presents a serious flight risk and that a detention hearing is warranted. Contrary to defendant's assertion that the government "simply stated the first, second, and third elements of the crime charged," Dkt. No. 4 at 5, as articulated above the government's proffer included information about the consequences defendant faces and may seek to avoid, his tenuous connections to the Northern District of New York and the United States more broadly, his previous, repeated, and admitted violations of lawful orders and procedures, his willingness and ability to pay to travel and avoid detection across great distances, and his circumvention of immigration authorities over a period of years. *See* Tr. at 8–9. These facts, consequences, and characteristics are all properly considered as part of the "very low" threshold

question of whether to conduct a detention hearing.  And taken together, all of these pieces of evidence paint a picture of an individual with the means and motivation to flee.

Defendant has offered little in the way of rebuttal.  While his counsel noted at the initial appearance that he "went undetected for a five-year period" and "was cooperative with [B]order [P]atrol agents," Tr. at 9, considering the other evidence presented here, the Court takes no comfort in defendant's apparent skill at evading detection while in the country illegally and failure to resist arrest upon being apprehended.  Nor do defendant's multiple previous deportations or his employment as a roofer weigh against the conclusion that he poses a serious flight risk.  *Cf. id.* at 10.  Rather, the overwhelming nature of the evidence against defendant at this stage betrays any suggestion that the government improperly relied on "the mere fact that he's charged with a crime" to seek detention.  *Id.*  It did not.  On these facts, the conclusion that defendant poses, at the very least, "a serious *risk*" of flight is unavoidable.  *See Figueroa-Alvarez*, 681 F. Supp. at 1138.

The government invites the Court to advance to the Act's second step and conclude, based on the papers, that pretrial detention is warranted.  *See* Dkt. No. 6 at 9 (citing *United States v. White*, 2021 WL 2155441, *10–11 (M.D. Tenn. May 27, 2021) (characterizing the "serious risk of flight" analysis under § 3142(f) and the "risk of non-appearance" analysis under § 3142(g) as a "distinction . . . without a difference" in many cases)).  But the government's appeal is from Judge Lovric's refusal to even hold a detention hearing.  And it would be an unusual procedural outcome to leave defendant without any opportunity to be heard on the record as to his detention before a neutral magistrate.  *Cf. Corley v. United States*, 556 U.S. 303, 321 (2009) ("The history of liberty has largely been the history of observance of procedural safeguards.").

But while the Court today reaches only the first step of the Act's two-part analysis, finding that a detention hearing was clearly warranted here, it is inclined to believe that the government would have prevailed at such a hearing. The barely contested proffer not only showed that defendant presents a serious flight risk, but also appeared likely to establish by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the *appearance of [defendant] as required* and the safety of any other person and the community." § 3142(e)(1) (emphasis added); *see also* § 3142(g) (listing factors to consider when weighing detention). Therefore, unless new evidence comes to light, the Court anticipates—without reaching the ultimate issue—that a hearing will result in pretrial detention.[2]

---

[2] The Second Circuit has indicated that defendants may waive certain requirements under the Act, including detention hearings. *United States v. Coonan*, 828 F.2d 1180, 1184 (2d Cir. 1987) (holding that to conclude otherwise "would . . . require meaningless, ritualistic hearings in situations where no one wants them"). Since it is far from clear that "no one wants" a detention hearing in this case, however, the Court will only revoke Judge Lovric's release order and remand for further appropriate proceedings. Yet mindful of additional avenues for relief, the Court notes that if release is ultimately denied, but new, relevant information arises before trial, defendant may seek to reopen the matter. § 3142(f)(2) ("The [detention] hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community.").

## V. CONCLUSION

The government has shown by a preponderance of the evidence that defendant poses a flight risk, that a detention hearing was warranted, and that any release order was unjustified.

Therefore, it is

ORDERED that the government's appeal of Judge Lovric's release order (Dkt. No. 1) is GRANTED; and

ORDERED that the government's motion to revoke Judge Lovric's release order (Dkt. No. 2) is GRANTED.

The Clerk of the Court is directed to remand this matter to Judge Lovric for the purposes of holding a detention hearing and any further pretrial proceedings.

**IT IS SO ORDERED.**

Dated: April 17, 2025
      Utica, New York.

Anthony J. Brindisi
U.S. District Judge